UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| DANA NESSEL, | ) | |
|        Plaintiff, | ) | |
| | ) | No. 1:26-cv-731 |
| v. | ) | |
| | ) | |
| | ) | Honorable Paul L. Maloney |
| KALSHIEX, LLC, | ) | |
|        Defendant. | ) | |
| | ) | |

## <u>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO REMAND</u>

This matter comes before the Court on a motion by Plaintiff, the Attorney General of the state of Michigan, to remand this case to Michigan state court and for costs and fees associated with the motion. (ECF No. 7). Plaintiff initially filed the case in Ingham County Circuit Court, and Defendant, Kalshiex, LLC ("Kalshi"), removed the case to this Court. (ECF No. 1). Defendant argues that Plaintiff's state causes of action necessarily raise federal issues, that those causes of action are completely preempted by federal law, and that Plaintiff needed to join the Commodity Futures Trading Commission (CFTC) in the state case under state court rules. None of Defendant's theories that this case belongs in this Court are ultimately convincing. But at least some of them are based on reasonable arguments in a rapidly evolving area of law. Plaintiff's motion will thus be granted to the extent it seeks remand and denied to the extent it seeks costs and fees.

## I.

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Defendants removing a case from state to federal court have the burden of establishing jurisdiction. *Mays v. City of Flint*, 871 F.3d 437, 442 (6th Cir. 2017). Removal statutes "are to be strictly construed, and 'all doubts should be resolved against removal.'" *Id.* (quoting *Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007)). Courts must remand removed cases over which they lack subject matter jurisdiction. 28 U.S.C. § 1447(c). Courts may consider motions to remand as facial attacks on subject matter jurisdiction, *Mays*, 871 F.3d at 442, and in such attacks, the factual allegations of the complaint are taken as true, *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012).

## II.

Defendant operates an online prediction market. (ECF No. 1-1 at PageID.20 ¶ 37). It offers event contracts that allow customers to stake money on either the "yes" position that a specified thing will happen, or the "no" position that it will not. (*Id.* at PageID.21 ¶¶ 42-47). These event contracts include products allowing customers to take positions on the outcomes of sports games and the scores of those games. (*Id.* at PageID.23-24 ¶ 56). Plaintiff initiated this case in Ingham County Circuit Court on March 3, 2026, alleging that Defendant operates an unlicensed and unlawful gambling operation under Michigan law, and that Defendant's offerings constitute a public nuisance. Plaintiff sought a declaration that Defendant's operation of what Plaintiff alleges is a "sports betting operation" is a common law nuisance, and an injunction preventing Defendant from "engaging in or advertising [its]

internet sports betting operation." (*Id.* at PageID.33). Two days after the complaint was filed, Defendant filed its notice of removal to this Court. (ECF No. 1).

III.

Defendant has a few theories supporting removal. First, it argues that the case presents federal questions, and second, it argues that it should be able to invoke the statute about cases directed against federal agencies or officers. Plaintiff challenges each of Defendant's theories and argues that Defendant's arguments on the whole are weak enough to merit granting attorney fees to Plaintiff. The Court addresses each argument in turn.

### A.  Federal Question

Defendant claims the Court has federal question jurisdiction over this case. *See* 28 U.S.C. § 1331. To invoke federal question jurisdiction, plaintiffs must plead a cause of action created by federal law or a state law claim that implicates "significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). Plaintiff here sued solely under Michigan law, and it is "settled law" that cases cannot come into "federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 392. Defendant thus cannot rely on its core argument that Michigan's gambling laws are preempted by federal law as applied to Defendant's sports products and must rely on the "slim category" of cases implicating significant federal issues. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006). To fall within it, Plaintiff's state law claim must necessarily raise a federal issue that is actually disputed and substantial, and the Court must be able to entertain it "without disturbing any congressionally

3

approved balance of federal and state judicial responsibilities." *Est. of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1014 (6th Cir. 2018).

### 1.  Plaintiff's state law claims do not necessarily raise federal issues.

Defendant's first theory of a federal issue necessarily raised is based on its theory that the relevant Michigan statutes define "wagering" through reference to federal law. But they do no such thing. Defendant's theory is founded on a section of Michigan law entitled "Legislative findings and declarations," part of the Lawful Sports Betting Act ("LSBA"). Mich. Comp. Laws § 432.402. In that section, the state legislature found that "[t]his act is consistent and complies with the unlawful internet gambling enforcement act of 2006, 31 USC 5361 to 5367, and with 18 USC 1084, and permits the use of the internet" to place "a sports bet or wager if that use complies with this act." *Id.* § 432.402(b). Defendant argues that LSBA's definition of "sports betting" includes the term "wagering," *id.* § 432.403(bb), and the term "wagering" is not specifically defined. Rather than concluding that "wagering" should be given its plain meaning in absence of a legislative definition, *see McCormick v. Carrier*, 795 N.W.2d 517, 524-25 (Mich. 2010), Defendant concludes that "wagering" must be given the same definition it has under the Unlawful Internet Gambling Enforcement Act of 2006 ("UIGEA") based on the "consistent and complies with" language of § 432.402(b). Defendant's conclusion does not make sense. The legislative finding that LSBA is broadly "consistent" with UIGEA implies that both LSBA and UIGEA can coexist, not that LSBA adopts anything in particular from UIGEA. *See Consistent*, American Heritage Dictionary of the English Language (3d ed. 1996) ("In agreement; compatible[.]"). UIGEA also does not define "wager," but instead the term "bet or wager" used throughout the UIGEA. 31

U.S.C. § 5362(1); *see* §§ 5365(c)(2), 5366(b), 5367. That term of art does not appear in the LSBA definition of sports betting. And the LSBA *does* define "internet sports betting wager," Mich. Comp. Laws § 432.403(w), as referenced in the complaint, (ECF No. 1-1 at PageID.28 ¶ 76), and that term is material to Plaintiff's legal theories, (*id.* at PageID.31 ¶ 92); § 432.404(7). Defendant's theory thus relies on the LSBA incorporating a definition of a term it does not use from a statute it does not incorporate. Interpretation of the "bet or wager" definition from the UIGEA is irrelevant to interpretation of the LSBA, so Defendant's theory that interpretation of the UIGEA is necessarily raised fails.

Defendant's citation of *Georgia Gambling Recovery LLC v. Kalshi Inc.*, No. 4:25-cv-310 (CDL), 2026 WL 279375 (M.D. Ga. Feb. 3, 2026), does not change this result. The court in *Georgia Gambling Recovery* was not interpreting Michigan law. Instead, it was interpreting a Georgia statute that Georgia courts determined required reference to other sources of law to make a gambling contract illegal. *Id.* at *2-3. For example, the statute "did not void a Georgia contract relating to the purchase of a Kentucky lottery ticket because the lottery was lawful where the contract was formed." *Id.* at *3 (citing *Talley v. Mathis*, 453 S.E.2d 704 (Ga. 1995)). A claim under that statute, then, necessarily raised the question of whether the contract was lawful under federal law. *Georgia Gambling Recovery*, 2026 WL 279375, at *3. That is not how Michigan's LSBA works: its framework does not require reference to any external sources of law to determine an act's legality.

Defendant's second theory is that Plaintiff's nuisance claims necessarily raise a federal issue, but this argument simply repeats the argument about the LSBA's interaction with the UIGEA. Plaintiff's nuisance claim rests on allegations that Defendant violated multiple

statutes: the "LSBA, the Gaming Act and the Penal Code." (ECF No. 1-1 at PageID.32-33 ¶ 101). But Defendant does not articulate any theory that the other referenced statutes incorporate the UIGEA: it merely references its previous arguments about the LSBA and once more cites *Georgia Gambling Recovery* without any additional analysis of Michigan law. (*See* ECF No. 8 at PageID.169). The first argument failed, so this one does too.

Defendant goes on to make arguments about the "Other Grable Factors." (*Id.*). But *Grable* did not present factors to be balanced, it presented elements of a test. *Grable*, 545 U.S. at 314 ("[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."). The Supreme Court, Sixth Circuit, and this Court have all described the prongs of the *Grable* test as required elements. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) ("[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met, we held, jurisdiction is proper . . . ."); *Miller v. Bruenger*, 949 F.3d 986, 992 (6th Cir. 2020) ("To establish federal jurisdiction on this basis, the underlying cause of action must (1) necessarily raise a stated federal issue that is (2) disputed and substantial and (3) hearable by the federal courts without disturbing the established federal-state court balance." (citation modified)); *Michigan v. Enbridge Energy, LP*, 571 F. Supp. 3d 851, 856-57 (W.D. Mich. 2021) (quoting the *Grable* test then explaining that "[w]here these requirements are met," jurisdiction is proper (citing *Gunn*, 568 U.S. at 258)). To treat the "necessarily raised" element as anything

other than a requirement would effectively do away with the well-pleaded complaint rule and treatment of federal law defenses explained in *Caterpillar*. This Court cannot do that, nor should it. State courts are perfectly capable of handling defenses based in federal law. *See Tisdale v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the U.S. & Can., Loc. 704*, 25 F.3d 1308, 1309 (6th Cir. 1994) ("As in other cases in which a defendant asserts a defense based on a federal constitutional, statutory, or administrative provision, the state court may have to interpret some text affected by federal law. But this neither invokes removal jurisdiction nor divests the state court of its normal authority to adjudicate a case that contains an issue touching upon federal law."). Because Defendant's *Grable*-based arguments failed at the necessarily raised step, the Court need not analyze them further.

### 2.  Federal law does not completely preempt Plaintiff's state law causes of action.

Defendant's final argument for federal question jurisdiction invokes an "exception to the well-pleaded-complaint rule," namely that for "complete preemption." *Miller*, 949 F.3d at 994 (citation modified). "Complete preemption arises in the rare circumstance where Congress legislates an entire field of law," so "proving such exhaustive preemption by the federal government is exceedingly difficult." *Id.* Statutes creating complete preemption must "reflect clear congressional intent" to "override[] all state law on the topic" with language containing "extraordinary preemptive power." *Id.* at 994-95. This is an "exacting standard" requiring "express terms," and even express preemption provisions do not ordinarily meet it. *Id.* at 995. The Supreme Court has only ever found that three statutes met the standard. *Roddy v. Grand Trunk W.R.R. Inc.*, 395 F.3d 318, 323 (6th Cir. 2005). They do so in part

7

because they provide "the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Id.* (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)). Complete preemption thus requires both language that overcomes the "exceptionally strong presumption against complete preemption," *Miller*, 949 F.3d at 995 (quoting *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1189 (8th Cir. 2015)), and a "parallel federal cause of action" to which state law claims can be "convert[ed]," *Roddy*, 395 F.3d at 323.

Both are required, but Defendant's arguments as to the second element, the parallel cause of action, are particularly thin. Defendant gestures toward the CEA in toto without elaborating on where the cause of action is in the statute, what it is, who could invoke it, or providing any other detail. (*See* ECF No. 8 at PageID.177). No other court has ever found that the CEA provides a parallel cause of action, and no court Kalshi presented its complete preemption theory to ever found complete preemption. *See, e.g., Ohio Gambling Recovery, LLC v. Kalshi Inc.*, No. 4:25-CV-1573, 2026 WL 865788, at *5-6 (N.D. Ohio Mar. 30, 2026); *Kentucky Gambling Recovery LLC v. Kalshi Inc.*, No. 3:25-cv-00054-GFVT, 2026 WL 596107, at *3 (E.D. Ky. Mar. 4, 2026); *Nevada v. KalshiEX, LLC*, No. 2:26-cv-00406-MMD-MDC, Dkt. No. 45, slip op. at 6-9 (D. Nev. Mar. 2, 2026); *Massachusetts v. KalshiEX LLC*, 1:25-cv-12595-RGS, Dkt. No. 34 (D. Mass. Oct. 28, 2025). Defendant insists that a footnote in *Caterpillar* means that the cause of action need not provide "the plaintiff with a remedy." (ECF No. 8 at PageID.178). Even assuming that were true, the cause of action would still need to *exist* and serve to parallel the preempted causes of action. The *Caterpillar* footnote also only provides that the parallel federal cause of action need not provide the

*same type* of relief as available under the preempted state law. *See Caterpillar*, 482 U.S. at 391 n.4. Defendant also argues that states may ask the CFTC to change its rules. (ECF No. 8 at PageID.178). This is not a cause of action at all, and Defendant cites no authority to indicate it is, nor does it make any argument to that effect. Even if Defendant were correct about the breadth of the CEA's preemption, its preemption arguments would still be federal defenses in the absence of the required cause of action to invoke complete preemption.

Defendant is *not* correct, though, that the CEA's preemptive effect is as comprehensive as it would need to be. Both a motions panel of the Sixth Circuit and this Court have expressed skepticism that the CEA preempts the application of state gambling laws to exchange-traded contracts to nearly the extent that Defendant claims it does, even assuming that its products are "swaps." *See Kalshiex LLC v. Schuler*, No. 26-3196, 2026 WL 1295806, at *4-6 (6th Cir. Apr. 24, 2026); *QCX, LLC v. Nessel*, No. 1:26-cv-710-PLM-PJG, Dkt. No. 41, at PageID.1119-1127 (W.D. Mich. June 17, 2026). The CEA allows states to bring claims for violations of the CEA itself, 7 U.S.C. § 13a-2(1), specifically provides that states may bring civil and criminal fraud cases in state court, *id.* § 13a-2(7), and "supersede[s] and preempt[s] the application of any State or local law that prohibits or regulates gaming" only in certain situations, *id.* § 16(e)(2). The "exclusive jurisdiction" language on which Defendant relies, *id.* § 2(a)(1)(A), exists "to separate the functions of the [Commodity Futures Trading] Commission from those of the Securities and Exchange Commission and other regulatory agencies." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 386 (1982). It was "intended only to consolidate federal regulation . . . in the Commission." *Id.* at 387. And the savings clauses in § 2(a)(1)(A) "signal[] that Congress does

9

not mean to preempt *the field.*" *Schuler,* 2026 WL 1295806, at \*5; *see also Int'l Paper Co. v. Ouellette,* 479 U.S. 481, 492 (1987) (explaining that a savings clause "negate[d] the inference that Congress 'left no room' for state causes of action").

Defendant thus fails to establish complete preemption. It does not identify the necessary parallel cause of action and fails to identify language in the CEA which would overcome the strong presumption against complete preemption. Its other grounds for federal question jurisdiction failed as well. Defendant is left with its federal officer theory, to which the Court now turns.

### B.  Federal Officer Removal

Cases may be removed from state to federal court if they are "against or directed to" the United States "or any agency thereof or any officer . . . of the United States or of any agency thereof . . . for or relating to any act under color of such office." 28 U.S.C. § 1442 (a). The case may be removed "by them," meaning the agency or officer. *Id.* The statute's "basic purpose is to protect the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Federal Government acting within the scope of their authority." *Watson v. Philip Morris Co.,* 551 U.S. 142, 150 (2007) (citation modified). Defendant is not part of the United States government, and "a federal officer is the only person who can remove a case" under the statute. *Hood v. Security Bank of Huntington,* 562 F. Supp. 749, 750 (S.D. Ohio 1983); *Chevron USA Inc. v. Plaquemines Parish,* 146 S. Ct. 1052, 1057 (2026) ("Under the federal officer removal statute, . . . the removing defendant must be the United States, a federal

10

agency, a federal officer, or a person 'acting under' a federal officer, such as certain private parties hired to assist federal officers.").

Defendant's theory is that Plaintiff was required to join the CFTC under Michigan's court rules and did not. Defendant cites no authority suggesting that a state court rule could ever allow it to invoke a removal statute usable only by federal agencies and officers. Defendant cites the general principle that artful pleading cannot defeat removal, but the case it cites explains that "a plaintiff may not defeat removal *by omitting to plead necessary federal questions.*" *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983) (emphasis added). The Court has already addressed Plaintiff's federal question arguments, and that case does not address federal officer removal. To the extent that Defendant argues that the CFTC is a necessary party, that would be addressed in this Court under the standards of Federal Rule of Civil Procedure 19, not a Michigan court rule. *See Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) ("The Federal Rules of Civil Procedure are the rules of practice which apply to civil actions in the federal courts, regardless of whether jurisdiction is based on federal question or diversity of citizenship."). But applying Rule 19 would require the Court to have subject matter jurisdiction over the case, which it would only have if the case were properly removed. At least one other court has rejected an argument similar to Defendant's based on Rule 19. *See Washington v. KalshiEX, LLC*, No. C26-1062-JCC, 2026 WL 1217743, at \*2 (W.D. Wash. May 5, 2026).

Even entertaining Defendant's theory as not foreclosed by § 1442's text, though, Defendant's interpretation of the Michigan court rule is unreasonable and not based on any authority. The rule on which Defendant relies, the "Necessary Joinder" rule, provides that

11

"persons having such interests in the subject matter of an action that their presence in the action is essential to permit the court to render complete relief must be made parties and aligned as plaintiffs or defendants in accordance with their respective interests." MCR 2.205(A). That rule serves to "prevent double recoveries and to obviate the risk of subsequent suits." *C-Spine Orthopedics, PLLC v. Progressive Mich. Ins. Co.*, 2 N.W.3d 71, 75 (Mich. Ct. App. 2022). Plaintiff's complaint seeks declaratory and injunctive relief against Defendant. (ECF No. 1-1 at PageID.33). Defendant never explains why those forms of relief would not be "complete" without the CFTC's involvement. Whatever interests the CFTC might have in the outcome of the case, they are insufficient to prevent courts from granting complete relief on Plaintiff's claims against Defendant. The CFTC would not be required to do anything and faces no legal exposure. Defendant's argument seems to be that complete relief can never be afforded in *any* case that potentially involves federal preemption arguments unless the federal agencies are parties to the case. That idea is farfetched and lacks any support. Moreover, even if Defendant's arguments had merit, the proper course of action would have been to present them to the state court to remedy the supposed necessary party issue. *See* MCR 2.205(B). Then, if Defendant were successful, the CFTC could have joined the case, and *it* could have chosen whether to remove the case under § 1442. That choice would never have been Defendant's to make in any sequence of events. Defendant's final theory supporting removal fails, so Plaintiff's motion to remand will be granted.

### C.  Plaintiff's Request for Costs and Fees

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." § 1447(c). Courts may

award fees "only where the removing party lacked an objectively reasonable basis for seeking removal," and "when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Removal can be objectively unreasonable without being frivolous, and "objective reasonableness may depend on 'the clarity of the law at the time the notice of removal was filed.'" *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 489 (6th Cir. 2013) (quoting *Lott v. Pfizer*, 492 F.3d 789, 792 (7th Cir. 2007)). When "clear case law" precludes a party's argument for removal, that party has "no objectively reasonable basis for removal." *Powers v. Cottrell, Inc.*, 728 F.3d 509, 520 (6th Cir. 2013).

The Court concludes that a fee award is not warranted here. It is true that Defendant could not successfully defend its removal and that some of Defendant's arguments were quite weak—its federal officer theory especially. It is also true that Defendant is on a losing streak with similar arguments in district courts across the country. That said, none of those other courts have awarded fees to the parties requesting remand, and Plaintiff has not indicated otherwise. *See, e.g., Ohio Gambling Recovery*, 2026 WL 865788, at *10; *Kentucky Gambling Recovery*, 2026 WL 596107, at *10; *Washington*, 2026 WL 1217743, at *2; *Illinois Gambling Recovery, LLC v. Kalshi Inc.*, No. 25CV11374, 2026 WL 1164703, at *7 (N.D. Ill. Apr. 29, 2026). At least as far as Defendant's federal question arguments are concerned, the law is not settled regarding the degree to which the CEA preempts state law claims. Some courts have accepted arguments similar to Defendant's related to the "exclusive jurisdiction" clause in 7 U.S.C. § 2(a)(1)(A), including the only appeals court to yet decide the issue. *See KalshiEX, LLC v. Flaherty*, 172 F.4th 220, 228-31 (3d Cir. 2026); *Kalshiex*

13

*LLC v. Orgel*, No. 3:26-cv-00034, 2026 WL 474869, at \*9-10 (M.D. Tenn. Feb. 19, 2026).

Many others, of course, have rejected them. *See, e.g.*, *Schuler*, 2026 WL 1295806, at \*4-6;

*QCX*, No. 1:26-cv-710-PLM-PJG, Dkt. No. 41, at PageID.1119-1127; *KalshiEX LLC v.*

*Martin*, 793 F. Supp. 3d 667, 676-86 (D. Md. 2025); *KalshiEX, LLC v. Hendrick*, 817 F.

Supp. 3d 1014, 1023-34 (D. Nev. 2025). Those arguments are currently before the Sixth

Circuit, which has not issued a binding decision yet. If Defendant loses once more there, the

law might be clearly settled, at least in this Circuit, but it is not today. Perhaps this decision

will be the tipping point for a future court on a similar motion. *Cf. Powers*, 728 F.3d at 520

(describing the fact that the defendant's removals had been "rejected in 17 other federal

cases" as "noteworthy" in holding that the defendant "had no objectively reasonable basis for

removal"). But the Court finds the current legal landscape is not quite so hostile to all of

Defendant's arguments as to justify a fee award.

## IV.

Plaintiff's motion (ECF No. 7) is **GRANTED IN PART AND DENIED IN PART**.

It is denied insofar as it seeks an award of costs and fees. But it is granted insofar as it seeks

remand. This case is **REMANDED** back to the Ingham County Circuit Court.

**IT IS SO ORDERED.**

Date:  June 25, 2026                                    /s/ Paul L. Maloney
                                                         Paul L. Maloney
                                                         United States District Judge